IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DIRECTV, INC., a California
corporation,

        Plaintiff,　　　　　　　　　　Case No. 03-3046-HO

        v.　　　　　　　　　　　　　　ORDER

SHANNON BROOME, et al.,

        Defendants.

Plaintiff moves for default judgment against defendant Ray Hinthorne, pursuant to Fed.R.Civ.P. 55(b). Plaintiff also moves for entry of a permanent injunction, and for an award of attorney fees and costs. The court previously granted plaintiff's motion for entry of default against Hinthorne. See Civil Minutes dated January 12, 2004.

## Discussion

Upon default, the factual allegations of the complaint are

generally taken as true, except the allegations relating to damages. Televideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987). The court is not required to make detailed findings regarding liability. Fair Housing of Marin v. Combs, 285 F.3d 889, 906 (9th Cir. 2002). The complaint alleges Hinthorne (1) received and/or assisted others in receiving plaintiff's satellite transmissions of television programming without authorization in violation of 47 U.S.C. § 605(a), (2) intentionally intercepted, endeavored to intercept or procured others to intercept or endeavor to intercept plaintiff's satellite transmissions of television programming using pirate access devices[1] in violation of 18 U.S.C. § 2511(1)(a), and (3) possessed and used pirate access devices, knowing or having reason to know that the design of such devices render them primarily useful for the purpose of surreptitious interception of plaintiff's satellite transmissions of television programming, and that such devices or components thereof have been or will be sent through the mail or transported in interstate or foreign commerce, in violation of 18 U.S.C. § 2512(1)(b). The complaint also contains more specific allegations as to how Hinthorne came into possession of pirate access devices. Complaint, ¶ 9.

Based on these allegations, the court finds Hinthorne liable

---

[1]The complaint defines "pirate access devices" as illegally modified DIRECTV access cards and other devices. Complaint at 2.

on plaintiff's first and second claims alleging violations of 47 U.S.C. § 605(a) and 18 U.S.C. § 2511(1)(a), respectively. Hinthorne is not liable on plaintiff's third claim for violation of 18 U.S.C. § 2512(1)(b). There is no private right of action for violation of this statute.

Where default judgment is possible based on sufficient allegations, the court retains discretion to grant or withhold judgment. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In this case, resolution on the merits is not possible, because Hinthorne has not appeared; the allegations of the first and second claims state claims upon which relief may be granted; there are no disputed issues of fact as a result of Hinthorne's non-appearance; and nothing suggests that Hinthorne's default is the result of excusable neglect. Default judgment is therefore appropriate. Id.

Upon finding a violation of Section 605(a), the court may grant an injunction on such terms it deems just to restrain future violations. 47 U.S.C. § 605(e)(3)(B)(i). A person whose communication is intercepted in violation of 18 U.S.C. § 2511(1)(a) may obtain an injunction. 18 U.S.C. § 2520(b)(1). Following these standards, Hinthorne is permanently enjoined from (1) receiving, assisting in receiving, transmitting, assisting in transmitting, divulging, or publishing DIRECTV satellite transmissions in violation of 47 U.S.C. § 605, and (2)

intercepting, endeavoring to intercept, or procuring any other person to intercept or endeavor to intercept DIRECTV's satellite transmissions in violation of 18 U.S.C. § 2511(1)(a).

Plaintiff seeks statutory damages in the amount of $100,000 for Hinthorne's violations of 47 U.S.C. § 605(a) and 18 U.S.C. § 2511(1)(a). A party aggrieved by violation of Section 605(a) may recover statutory damages of not less than $1,000 or more than $10,000 for each violation as the court considers just. 47 U.S.C. § 605(e)(3)(C)(i)(II). A party whose communication is intercepted may recover damages in a civil action. 18 U.S.C. § 2520(a). A court has discretion to award statutory damages for violation of 18 U.S.C. § 2511(1)(a), but if it chooses to do so it must award the greater of $100 a day for each day of violation or $10,000. 18 U.S.C. § 2520(c)(2).

Plaintiff submitted evidence that Hinthorne purchased equipment needed to receive DIRECTV's services from Radio Shack and subscribed to DIRECTV premium programming packages from December, 1998 to July, 1999, at which time he disconnected his account. Whalen, Decl., ¶ 25. Plaintiff submitted additional evidence that Hinthorne made the following 12 purchases of pirate access devices: on or about August 3, 2000, and again on or about August 13, 2000, Hinthorne purchased a reader/writer and an unlooper; on or about March 2, 2001, Hinthorne purchased four bootloaders; on or about March 19, 2001, and again on or about

April 5, 2001, Hinthorne purchased two emulators. Whalen Decl., Exs. 2-6.

According to defendant's witness, a reader/writer is used to clone an unauthorized or un-activated access card to enable the card to decrypt the same programming as an authorized or activated card, or to program access cards to receive all DIRECTV programming, including pay-per-view events, without payment to DIRECTV. Whalen, Decl., ¶ 30. An unlooper restores functionality to illegally modified access cards disabled by misuse or DIRECTV's anti-piracy measures. Id., ¶ 31. DIRECTV is unaware of plausible commercial uses for unloopers. Id. An emulator is a device used in conjunction with a personal computer, DIRECTV receiver, DIRECTV access card, and reader/writer to allow the user to view all unauthorized DIRECTV services without payment, and to protect access cards from DIRECT's anti-piracy measures. Id., ¶ 32. A bootloader device enables the use of access cards previously disabled by DIRECTV. Id., ¶ 33. A bootloader requires no additional software for interception of DIRECTV's signal. Id.

Plaintiff's witness also states that DIRECTV has evidence that Hinthorne visited and posted messages relating to the piracy of DIRECTV programming on websites and/or usenet forums. Id., ¶ 34. Hinthorne joined a website devoted primarily to the exchange of information for the piracy of DIRECTV's satellite signals on

or about January 24, 2001, and made eight posts on the website's forums. Id., ¶ 50. According to the witness, Hinthorne's posts "appear to reflect [Hinthorne's] use of the devices he purchased for the purpose of unlawfully intercepting or attempting to intercept DIRECTV's signal and programming," and "Hinthorne assisted others in intercepting DIRECTV's satellite signal, while actively pursuing the illegal interception of DIRECTV's satellite programming himself." Id., ¶¶ 50-51.

In two posts dated January 24 and 25, 2000, Hinthorne referred two persons to "Dr7" or "dr7.com." Id., Ex. 7 at 5. The posts read as follows:

> dr7 Has a lot of how to file's.Plan to read alot.Watch all the info that is posted.DJrock &skydive seem the know therestuff so read the things they post.I am in the same boat.Good Luck Ray

Id.

\* \* \*

> Do not hook it up.I think you need to get the key's ;from the dump first.If you hook it up D* will hideyour key's to your IRD in your tsop. I am new also and could be wrong about this.Try dr7.com and look at the Echo file'sPlan to read.Good Luck

Id. There is no evidence that persons reading these posts intercepted DIRECTV's signal. Further, plaintiff's submissions demonstrate that the second post is responsive to a request from a person who purchased a "Dish network (Echostar 4722 system)" and who "would love to mess it up in a good way." Whalen Decl., at 24, ¶ 51. The court understands that Dish Network is a

6 - ORDER

competitor of DIRECTV.

Plaintiff also points to the following January 25, 2000, post as evidence that Hinthorne owned and used two pirate access devices not alleged in the complaint.

> I am on my last step I think.There are no Key's in the dump of my e*3000.Can you use the avrkeys or wintalk 102 program to get them or do you have to pull the tsop?  Don't they change them every week? I have the atmel programmer &the 8515 chipand did the internal mod with the 40 pin dipbut can't seem to get it programmed right.I read that too fast of a pc could cause a problem is this true?I hate to ask for helpbut I am down to my last straw. If anyone know's the easiest program and way to do this you would be number 1in my life for a long time. P.s. A name and address from the person that helps me get this going. I would be more then glad to send you something nice for your time and trouble.Let's talkRay rnk@rvi.net

Id., ¶ 51.  The court agrees that this post evinces ownership of the "atmel programmer" and "8515 chip."  The court disagrees that the post evinces successful use of the devices to intercept DIRECTV's signal.

From the evidence, plaintiff's witness concludes that Hinthorne intercepted DIRECTV's programming without authorization, assisted others in doing so through his distribution of pirate access devices and posting of instructions, and modified and assembled equipment to intercept DIRECTV's programming.  Id., ¶ 54.

The court concludes from the evidence that Hinthorne possessed the means to intercept DIRECTV's signal without authorization, and that he attempted to do so.  The court

7 - ORDER

declines to infer that Hinthorne actually intercepted DIRECTV's signal, or that he assisted others in doing so, however. While direct evidence is not invariably required, the court notes that there is no such evidence that Hinthorne or anyone to whom he provided advice intercepted DIRECTV's signal without authorization. Hinthorne possessed a number of devices that may or may not be inconsistent with personal use, but there is no direct evidence that Hinthorne distributed the devices. Plaintiff's conclusion that Hinthorne modified and assembled equipment to intercept DIRECTV's signal is irrelevant. The complaint does not allege that Hinthorne violated the prohibition of 47 U.S.C. § 605(e)(4) against this practice.

Although this is a close case, the court declines to award statutory damages based on the lack of direct evidence and the state of the circumstantial evidence. The court is guided in its ruling by the legal scheme of the statutory provisions invoked by plaintiff which establish interception of the signal, not possession of devices or attempted interception, as the lynchpin to an award of damages.

Plaintiff is entitled to an award of reasonable attorneys' fees and costs. 47 U.S.C. § 605(e)(3)(B)(iii) (award mandatory); 18 U.S.C. § 2520(b)(3) (award discretionary). Plaintiff seeks attorneys' fees in the amount of $5,512.36, and costs in the amount of $438.15. The attorneys' fee request is based on hourly

rates of $250 for Portland attorneys Long and Smith, admitted to practice in 1992 and 1991, respectively, $180 for Portland attorney Tarbox, admitted in 1999, $125 for paralegal Karnopp, $60 for paralegals McCarthy and Ehlert, and $50 for paralegal Zochert. The attorney rates are somewhat higher than average rates for Portland attorneys with similar experience reported in the 2002 Oregon State Bar Economic Survey (13-15 years = $189, 10-12 years = $187, 4-6 years = $165). The higher rates are justified to compensate for inflation, and because plaintiff's attorneys have significant experience litigating the claims at issue. According to plaintiff, its attorneys have filed 52 lawsuits against 190 defendants on it's behalf. The court is handling several of these cases, and has observed that the claims are similar in many, if not all of the cases with which the court is familiar. The court therefore finds the hourly attorney rates to be reasonable, with the following exception.

To calculate fees attributable to hours expended by paralegal Ehlert, the court will use the $60 per hour rate stated in attorney Smith's declaration, and not the $115 per hour rate implied in the billing information submitted by plaintiff. The former rate is stated under penalty of perjury, and is consistent, in the court's experience, with rates commonly charged for paralegal services.

The court finds the number of hours expended to be

9 - ORDER

reasonable, except for the 6.1-hour block entry for Ehlert on November 11, 2004. Smith Decl., Ex. 1 at 14; see "Message from the Court re attorney fee petitions," available at <http://www.ord.uscourts.gov/attorney_fee_statement.pdf>. The court disallows this entry and reduces the dollar amount claimed for Ehlert's time by $55 per hour for time allowed, the difference between the rate implied in the billing information and the rate stated in attorney Smith's declaration. The court calculates the dollar amount disallowed as $1647.50. The court thus allows $3864.86 in attorney fees.

The cost bill reflects costs expended for the filing fee (prorated), fees of the process server, ChoicePoint and Open Online service fees, a subpoena fee, and photocopying. These costs appear reasonable, and are allowed.

## Conclusion

For the foregoing reasons, plaintiff's motion for default judgment and permanent injunction [#99], and motion for attorney fees and costs [#102] relating to defendant Ray Hinthorne are granted to the extent provided herein.

Ray Hinthorne is permanently enjoined from (1) receiving, assisting in receiving, transmitting, assisting in transmitting, divulging, or publishing DIRECTV satellite transmissions in violation of 47 U.S.C. § 605, and (2) intercepting, endeavoring to intercept, or procuring any other person to intercept or

10 - ORDER

endeavor to intercept DIRECTV's satellite transmissions in violation of 18 U.S.C. § 2511(1)(a).

The clerk is directed to enter final default judgment against Ray Hinthorne. The judgment shall provide that plaintiff shall take nothing on its claims, and that plaintiff shall recover from Ray Hinthorne $438.15 in costs, and $3,864.86 in attorneys' fees for prosecuting this action.

IT IS SO ORDERED.
DATED this 19th day if September, 2005.

Michael R. Hogan
United States District Judge